15045

STANTON *ET AL.* v. DAVID *ET AL.*

(7 S. E. (2d), 852)

January, 1939.

The decree of Special Judge Cothran, requested to be reported, follows:

This action was presented before me at Kingstree during the latter part of November, 1938, was marked heard by me, and was argued before me at Greenville on January 20, 1939.

The action is a contest by two sets of claimants to property formerly belonging to John C. Everett. They base their claims upon the following facts which will be enlarged later in this decree.

The plaintiffs. claim upon the ground that they are the beneficiaries under the will of John C. Everett and the defendants claim upon the ground that they are the beneficiaries under the will of Lillian R. Everett, the widow of John C. Everett.

From the above statement it is evident that both of the Everetts have died and left wills and a consideration and construction of those will be first attempted.

John C. Everett, a substantial farmer of Williamsburg County, was worth during his lifetime several thousand dollars. His will may be divided into two parts; first, a disposition of his real estate, and second, disposition of his personal property. A brief summary of his will by items is as follows:

Item 1. Payment of all debts by the executors.

Item 2. A devise of 85 acres of land to his sister, Susan David, subject to life estate of his wife, Lillian R. Everett.

Item 3. A devise of 24½ acres for life to a nephew, E. S. David, with remainder to J. C. David, a son of E. S. David.

Item 4. A devise of one acre to a nephew, Walter David.

Item 5. A devise of 2½ acres to his wife, Lillian R. Everett, for life, with remainder to Rev. D. H. Everett, a brother.

Item 6. This is the storm-center of this litigation and the first paragraph is as follows: "I direct my executors to hold my sixty-five (65) acres of land in Marlboro County during the life time of my wife L. R. Everett, and apply the rents and profits arising therefrom to the use and benefit of my said wife, except so much as is necessary to use for the property's upkeep, and after her death, I direct my executors to sell the said land and divide the net proceeds of the said sale, as follows:  *  *  *.". Then follows the distribution amongst his relatives which the testator wished to be made after the death of his wife.

The last paragraph of this item gives the executors the authority to sell the land and hold the proceeds for the benefit of his wife for life and at her death to make division of the remainder as therein described.

Having thus disposed of his real estate, the testator then refers to his personal property. Items 7, 8, 9, 10, and 13 give money and certain personal property to various relatives and to the Epworth Orphanage.

Item 11 is as follows: "I give and bequeath unto my wife, L. R. Everett, all of my other personal property of whatever nature and wherever found, and I direct my executors to deliver the same to her."

Item 12 directs the executors to keep the estate improved and in good condition, giving them authority to expend the necessary money for this purpose.

Item 14 appoints his wife, Lillian R. Everett, as executrix and his nephew, Walter David, as executor.

John C. Everett died during the first part of May, 1919, and his will was admitted to probate on May 14, 1919.

Little need be said regarding the will of Lillian R. Everett, the widow of John C. Everett. Suffice it to say that she died after the death of her husband, leaving a will un-

der the terms of which the defendants, other than Walter David, as executor, were given all of her property.

The will of John C. Everett was dated April 16, 1917, and on December 15, 1918, some five months prior to his death, he sold the land mentioned in Item 6 of his will for Thirteen Thousand ($13,000.00) Dollars, presumably for cash, as no mortgage was taken for any portion of the purchase money. No change was made in his will after this sale.

Shortly after the death of John C. Everett, an appraisal of his estate was made which showed assets of $48,099.22. No mention of his liabilities was made in this appraisal. The executor and the executrix then proceeded to take charge of the estate by paying out money for expenses, bequests, and for investments. It was stated in the hearing before me that no question was raised touching the regularity and legality of these investments. It now appears that the assets of the estate consist of only the Covington mortgage for $2,500.00, now worth about $1,250.00, and the O'Bryan mortgage, which is worth its face value of $8,000-.00. Other investments appear to have been lost. With the above facts before the parties, the plaintiffs filed their suit claiming that the two mortgages above set forth should be foreclosed and the proceeds paid to them. Their main ground of reliance for this position is that the intention of the testator was that Item 6 of the will was to speak as of the date of the will and not as of the date of the death of the testator.

The defendants, other than Walter David as executor, answered the complaint denying the right of the plaintiffs to the funds in question and alleging that the two mortgages in question were given to secure money loaned to the mortgagors, which money was a part of the personal property which had belonged to the testator and which had passed to Lillian R. Everett under Item 11 of the will and which in turn, passed to them under her will.

An order of reference was agreed upon and from the testimony so taken the foregoing facts are gathered, about

which there is little, if any, dispute. The Referee was required to report the testimony taken by him and was not required to report his conclusions either of law or of fact.

Basing his contention upon that sound proposition of law that a will must be so construed as to carry out the real intention of the testator as gathered from the will and from the attendant circumstances, the attorney for the plaintiffs cites the two very recent cases of *Daniel v. Perry,* 182 S. C., 326, 189 S. E., 353, and *Shultz v. Barr,* 186 S. C., 498, 196 S. E., 177. There can be no doubt of the correctness of this proposition of law. He then attempted to apply this principle of law to the will in question to the effect that the testator intended that if he sold the land he would hold the proceeds in trust for the benefit of his wife for life, with remainder to the beneficiaries as set forth in Item 6 of the will. As authority for this position, he cites the cases of *Beckwith v. McAlister,* 165 S. C., 1, 162 S. E., 623; *Rasor v. Rasor,* 173 S. C., 365, 175 S. E., 545, and *Garrett v. Garrett,* 2 Strob. Eq., 272, 283.

In the *Beckwith case, supra,* the Court quotes from the case of *Garrett v. Garrett, supra,* which quotation will be later set forth, but bases its ruling that the will speaks from its date rather than from the death of the testator upon the ground that the gift to those "now living" refers to those living at the time of the making of the will. (Authorities are cited.) This case is hardly applicable to the present situation.

The *Rasor case, supra,* is one wherein the intention of the testator is so plainly apparent that the Court did not hesitate to apply the well-established rule. The testator created three trust funds, for his three sons, of $5,000.00 each. To Henry he gave 100 shares of Grendel Mill stock of the par value of Fifty ($50.00) Dollars per share, and to Earle and Charles, fifty shares each of Ware Shoals Manufacturing Company stock of the par value of One Hundred ($100.00) Dollars per share. The par value of Grendel Mill

stock was reduced to Twenty ($20.00) Dollars per share and the difference paid to Rasor in cash. He made no change in his will. The Court held that the expressed intention of the testator was that each son should have a trust fund of Five Thousand ($5,000.00) Dollars and that Henry was entitled to have his trust fund composed of a sufficient number of shares of Grendel Mill stock to amount to that sum. The correctness of this holding is hardly open to question, although the Court admits that there is respectable authority to the contrary.

This is the only case cited on behalf of the plaintiffs which even remotely tends to sustain their contention. The difference in the two cases is apparent at a glance. In the *Rasor case* the testator had clearly expressed his intention that Henry should have a trust fund of Five Thousand ($5,-000.00) Dollars and the identical property to be embraced in that fund continued to be a part of the estate of the testator. The gift was equivalent to saying that the trust fund of Henry should be $5,000.00 of stock in Grendel Mills. The testator owned that much stock, whether it be represented in certificates of Fifty ($50.00) Dollars par value or Twenty ($20.00) Dollars par value being immaterial. In the present case the property mentioned in Item 6 of the will was no longer in the estate; it having been voluntarily disposed of by the testator in his life time. However, this will be more fully discussed in considering the contention of the defendants.

The report of the *Garrett case, supra,* must be read in connection with a report of the same case in 1 Strob. Eq., 96. In this case the testatrix disposed by will of only a portion of the real estate and personal property which belonged to her and the principal question was whether or not the will disposed of the property not mentioned. The Court held that both the real and personal property not mentioned in the will passed under the terms of the will for two principal reasons; first, that there was no residuary clause, the second, that the will spoke of "all my property."

The only portion of the opinion in this case from which the plaintiffs can derive any comfort is quoted below and has been cited as late as the *Beckwith case, supra*. It is as follows: "Where we can pronounce with confidence that the testator meant to announce an intention confined to the state of affairs existing at the date of his will, either in reference to the specific subjects which he wished to pass under it, or the persons to enjoy them, or truly intended in any other way to abridge the ambulatory capacity of the instrument; the construction must be such as to conform to the special intention thus indicated or expressed."

There is nothing in the will of John C. Everett which can cause one to pronounce with confidence that the testator intended to confine the state of affairs existing at the date of the will to all future time. It is quite true that every testator intends that the provisions of his will as first made should be carried out; otherwise why put them in the will at all? But the law grants to all that prerogative which tradition ascribes as peculiar to the female of the species, to wit: that form of mental gymnastics commonly known as changing the mind. Consequently, the maker of a will has a right to change provisions of the will even to the extent of revoking it, although it is a matter of common knowledge that the original provisions were then intended to be carried out. The only instance when this rule will be relaxed is on those rare occasions where the wording of the will or the existing circumstances will enable the Court with confidence to say that the will speaks as of its date rather than as of the date of the death of the maker.

Having found nothing in the will or in the circumstances which causes me to hold that the testator intended to surrender control of his property by making the will in question, this decree could well end at this point. However, a few observations will be indulged in to bolster up that conclusion.

From the *Garrett case, supra,* down to the present in our decisions, through all the textbooks, dictionaries, and encyclopedias, in decisions from other states too numerous to mention, the right of a testator to change his will has been universally recognized. Also from the *Garrett case* down through the decisions of our Court, probably the latest case being *Landrum v. Branyon,* 161 S. C., 235, 159 S. E., 546, 550, it has been consistently held, subject to the exceptions heretofore mentioned, that a will speaks as of the death of the testator. In the above-mentioned case, Circuit Judge Ramage, sitting with the Supreme Court, wrote the opinion. After holding: "A will is presumed to speak from the date of the death of the testator," he adds: "That great real estate lawyer, James Y. Culbreath, of Newberry, used to say that a will was ambulatory up to the death of the testator, but then it was fixed." Judge Ramage also quotes the old *Garrett case* to the same effect, saying: "And this should be the construction in all doubtful cases."

It could hardly be contended by the plaintiffs herein that the purchaser from Everett who paid $13,000.00 for the land did not have a good title, yet they have just as good grounds to attack that title as they have to claim the two mortgages in question. By Item 6 of the will, the title to the 65 acres was vested in the executor and executrix. Such being the case, if the will be binding as of its date, then the testator had no title to convey and the purchaser took nothing for his money. This only goes to show that the testator did not consider that he was bound by the will to the extent that he had lost control over his property.

Another circumstance which may be mentioned is that the money received by the testator for the land was never considered by him other than his own personal property. It bore no earmarks of a trust fund and was deposited in bank together with his other funds and expended as he saw fit. According to the first annual return by the executors, the cash on hand was only about Nine Thousand ($9,-000.00) Dollars, showing that Everett had spent some Four

Thousand ($4,000.00) Dollars of what the plaintiffs seek to establish as a trust fund but which the testator seems to have considered as his own private property.

Other circumstances could be added but they would only tend to strengthen the apparent invulnerable position of the defenders of the will and to extend this decree to an unreasonable length.

It is therefore ordered, adjudged, and decreed that the complaint in this action, be, and the same is, hereby dismissed with costs to be taxed against the plaintiffs.

*Mr. Henry E. Davis,* for appellants,

*Mr. J. D. O'Bryan,* for respondents,

March 25, 1940.

The opinion of the Court was delivered by MR. J. HENRY JOHNSON, ACTING ASSOCIATE JUSTICE.

By their appeal plaintiffs challenge the correctness of the decree on circuit of special Judge W. C. Cothran, reached by him in a contest between appellants, claiming as benefiaries under the will of John C. Everett, deceased, and respondents, claiming as beneficiaries under the will of Lillian R. Everett, widow of John.

By his will, dated 1917 and admitted to probate in 1919, John C. Everett devised a tract of land in Marlboro County, or more accurately stated, the rents and profits arising therefrom, unto his wife, Lillian, for the term of her life, directing his executors, upon her death, "to sell the said land and divide the net proceeds of the said sale" among

*his* relatives, namely, the plaintiffs, or those represented by them. By five other items of his testament, Mr. Everett made small bequests to other relatives and to an orphanage, and by Item 11 bequeathed unto Mrs. Everett "all of my other personal property of whatever nature and wherever found," specifically directing its delivery by the executors.

In December, 1918, approximately five months before his death, the testator sold the tract of land referred to above and a smaller tract in Williamsburg County for a total cash consideration of $15,500.00, of which amount, prior to the probate of his will in mid-May, 1919, he disposed of more than $7,000.00 for purposes not disclosed by the record, so that, upon his death, he had left less than $8,500.00.

His widow, Lillian R. Everett, by her will, admitted to probate in April, 1937, bequeathed all of her property unto the defendants, other than Walter David, executor.

The contention of plaintiffs, both below and here, is, in substance, that it was the intention of John C. Everett that his will should speak as of its *date,* and that the proceeds of sale of the tract devised to them in remainder by Item 6 passed to them under the terms of his will.

Defendants asserted, on the contrary, that, inasmuch as the testator, subsequent to the signing of his will, disposed of such tract, and a large portion of the proceeds arising from its sale, there was nothing, either in the will or in the circumstances attending its execution, to warrant the Court in concluding with any degree of assurance that testator did not intend that his testament should speak as of the date of his death—in accordance with the general rule of construction—and contended that all personal property, not otherwise disposed of, passed to Mrs. Everett under Item 11 of her husband's will, and, in turn, unto them under the provisions of her will.

The conclusion reached by special Judge Cothran that the will of John C. Everett must be construed as speaking as of the death of the latter is satisfactory to this Court,

and his decree to that effect will be reported as a part of this opinion. It is unnecessary to add to the opinion of the trial Judge, except to state that we find nothing in the case of *Kennedy v. Kennedy*, 190 S. C., 53, 2 S. E. (2d), 33, in conflict with the result reached on Circuit.

The decision of special Judge Cothran is affirmed.

Mr. Chief Justice Bonham, Messrs. Justices Carter and Fishburne and Mr. Acting Associate Justice E. H. Henderson concur.